**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CINDY RUTHERFORD,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 07-191** |
| | ) | **Electronically Filed** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social** | ) | |
| **Security, Defendant.** | ) | |

**MEMORANDUM OPINION**

**I.      Introduction**

Plaintiff Cindy Rutherford ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  Consistent with the customary practice in the Western District of Pennsylvania, the parties have filed cross-motions for summary judgment on the record developed at the administrative proceedings.

After careful consideration of the Commissioner's decision, the memoranda of the parties, and the entire record, the Court finds that the Commissioner's decision must be vacated, and that the case must be remanded for further administrative proceedings pursuant to the fourth sentence of § 405(g).  Therefore, the Court will deny the Commissioner's motion for summary judgment, deny Plaintiff's motion for summary judgment insofar as it seeks an award of benefits, grant Plaintiff's motion for summary judgment insofar as it seeks a remand for further administrative proceedings, and remand the case for further proceedings before the

Commissioner.

## II.    Procedural History

Plaintiff initially applied for DIB on February 20, 1997.  R. 16.  Her application was denied by the state agency on August 18, 1997, and by the Commissioner on July 23, 1998.  *Id.* On October 3, 2003, Plaintiff again filed for DIB, alleging disability as of June 13, 2002, due to depression, bipolar disorder, migraines and paranoia.  R. 52.  This application was initially denied on March 4, 2004.  R. 34-38.  Plaintiff filed a timely request for an administrative hearing on March 17, 2004.  R. 39.  On January 20, 2005, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge Edward Baines (the "ALJ").  R. 299.  Plaintiff, who was represented by counsel, appeared and testified at the hearing.  R. 301-325.  Dr. Charles Cohen, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. 325-329.

In a decision dated March 21, 2005, the ALJ denied Plaintiff's claims for DIB.  R. 13-23. In his opinion, the ALJ noted that while Plaintiff had worked as a cashier on a part-time basis, such work activity did not constitute "substantial gainful activity" within the meaning of the Act. R. 17.  Plaintiff was found to be suffering from bipolar disorder.  R. 19.  Although this impairment was deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c), it did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the "Listing of Impairments").  *Id.*  In accordance with 20 C.F.R. § 404.1545, the ALJ determined that Plaintiff had the residual functional capacity to engage in a significant range of low stress, heavy work.  R. 23.  Given this residual functional capacity assessment, the ALJ concluded that Plaintiff could perform her past relevant work as a

housekeeper, receptionist and data entry clerk and, hence, was not "disabled" for purposes of the Act. R. 22. The Appeals Council denied Plaintiff's request for review on December 22, 2006, thereby making the ALJ's decision the final decision of the Commissioner in this case. Plaintiff commenced this action against the Commissioner on February 21, 2007, seeking judicial review of the Commissioner's decision. Doc. No. 2.

**III.    Statement of the Case**

In his decision, the ALJ made the following findings:

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's bipolar disorder is a "severe" impairment, based upon the requirements in the Regulations (20 CFR § 404.1520(c)).

4.    This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity to perform a significant range of heavy work. The claimant is limited to work that is low stress.

7.    The claimant's past relevant work as a housekeeper did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8.    The claimant's medically determinable bipolar disorder does not prevent the claimant from performing her past relevant work.

9.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)).

R. 22-23.  Plaintiff argues that the ALJ erred in assuming that her history of part-time work established her ability to engage in "substantial gainful activity," in failing to properly evaluate the effect of her migraine headaches on her ability to work, and in failing to accurately convey her functional limitations to Dr. Cohen at the hearing.  Doc. No. 8, p. 2.

## IV.    Standards of Review

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. §

---

[1]  Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).
*Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet

avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

7

currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that the claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, the plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given the plaintiff's mental or physical limitations, age, education and work experience, he or she is able to

8

perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461

U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59;

*Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the

workforce at step 5 is frequently based in large measure on testimony provided by the vocational

expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a

claimant's significant impairments and restrictions in activities, physical and mental, as found by

the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of

jobs in the national economy which the claimant is capable of performing may be considered

substantial evidence in support of the ALJ's findings as to the claimant's RFC. *See, e.g., Burns v.

Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala

v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

---

[3]Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

*Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

10

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments,

provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he or

she must be found disabled if his or her condition is *equivalent* to a listed impairment. 20 C.F.R.

§ 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits."

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . .”). To that end, the ALJ may not

just make conclusory statements that the impairments do not equal a listed impairment in

combination or alone, but must set forth the reasons for his or her decision, and *specifically*

explain why he or she found that the claimant's impairments did not, alone or in combination,

equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220

F.3d at 119-20.

If the ALJ or Commissioner believes that the medical evidence is inconclusive or unclear

as to whether the claimant is unable to return to his or her past employment or perform other

substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she]

believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions. Instead, he or she must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not fully confirmed by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of his or her inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes that the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated: "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount the claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d

Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as a statement that the claimant is "disabled" or "unable to work," is not

dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4] Medical opinions on matters reserved

---

[4]Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the "treatment relationship," and states:

Generally, we give more weight to opinions from your treating sources, since

16

for the Commissioner are not entitled to "any special significance," although they must always be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings provide that, because an

---

these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[5]SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and

adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

State Agency Medical and Psychological Consultants

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must

_____

whether that RFC prevents him or her from returning to his or her past relevant work, and whether an individual is "disabled" under the Act.

consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## V.    Discussion

In support of her motion for summary judgment, Plaintiff makes three distinct arguments. First, she contends that the ALJ erroneously assumed that because she could work on a part-time basis, she was not statutorily disabled.  Doc. No. 8, pp. 6-12.  Second, she argues that the ALJ failed to determine, at the second step of the sequential evaluation process, whether her migraine headaches constituted a "severe" impairment.  *Id.*, pp. 13-16.  Third, she asserts that the ALJ's hypothetical question to Dr. Cohen did not accurately convey her functional limitations, thereby rendering his testimony inadequate to support the ALJ's findings.  *Id.*, pp. 17-19.  Since the first and second issues are inextricably intertwined with the third, the Court will address them together.

Plaintiff argues that the ALJ, in order to find her capable of engaging in substantial gainful activity, had to find that she could work "on a regular and continuing basis" (i.e., "8

hours a day, for 5 days a week, or an equivalent work schedule"). Social Security Ruling 96-8p,

61 Fed. Reg. 34474, 34475 (1996). In support of her argument, she relies on Social Security

Ruling 96-8p. Doc. No. 8, pp. 6-12. In his decision, the ALJ stated:

> The record shows that the claimant is capable of holding down a part-time job and
> has held down the same job position with the same employer for over eight years.
> (Exhibit B8F).

> Although that work activity did not constitute disqualifying substantial gainful
> activity, it does indicate that the claimant's daily activities have been somewhat
> greater than the claimant has generally reported.

> Accordingly, the undersigned finds the claimant retains the residual functional
> capacity to perform a significant range of heavy work. The claimant is limited to
> work that is low stress. These findings are in accordance with the opinions of the
> reviewing state agency consultants.

R. 22. Plaintiff sees the ALJ's statements as contradictory to each other. Doc. No. 8, p. 10.

Specifically, she argues that her alleged *inability* to engage in substantial gainful activity is

illustrated by her *failure* to engage in substantial gainful activity. *Id.*, pp. 10-12.

The applicable regulations provide a detailed formula for determining whether work

activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576. It is clear

that, under 20 C.F.R. § 404.1572(a), work "may be substantial even if it is done on a part-time

basis[.]" Nevertheless, the language contained in § 404.1572(a) is applicable only at the *first* step

of the sequential evaluation process. *Kelley v. Apfel*, 185 F.3d 1211, 1213-1215 (11th Cir. 1999).

In order to establish that a claimant is capable of performing other work in the national economy

at the *fifth* step of the process, the Commissioner must show that he or she is capable of working

on a "regular and continuous basis" (i.e., "8 hours a day, for 5 days a week, or an equivalent work

schedule"). *Id.* This case, however, was decided at the *fourth* step of the sequential evaluation

process.  Hence, further clarification is needed.

The inquiry at the fourth step of the process involves the question of whether the claimant is capable of performing his or her "past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant bears the burden of proof.  *Allen v. Barnhart*, 417 F.3d 396, 401, n. 2 (3d Cir. 2005); *Sykes v. Apfel*, 228 F.3d 259, 262-263 (3d Cir. 2000).  A claimant who is found to be capable of performing his or her past relevant work is determined not to be disabled regardless of whether he or she is capable of performing other work existing in the national economy.  *Barnhart v. Thomas*, 540 U.S. 20, 21-30 (2003).  The applicable regulation provides:

> (b) Past relevant work.  We will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work.
>
> (1) Definition of past relevant work.  Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it.  (See § 404.1565(a).)
>
> ***
> (3) If you can do your past relevant work.  If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled.  We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.

20 C.F.R. § 404.1560(b)(1), (3).  Since the ALJ made his determination at the fourth step of the analysis, the regulation's definition of the term "past relevant work" is controlling.

The Court cannot agree with Plaintiff's assertion that, in order to find that she was not disabled, the ALJ had to find that she was capable of performing the duties of a full-time job.  Social Security Ruling 96-8p, upon which Plaintiff places substantial reliance, contains a footnote which provides:

> The ability to work 8 hours a day for 5 days a week is not always required when evaluating an individual's ability to do past relevant work at step 4 of the sequential evaluation process. Part-time work that was substantial gainful activity, performed within the past 15 years, and lasted long enough for the person to learn it constitutes past relevant work, and an individual who retains the RFC to perform such work must be found not disabled.

Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34475, n. 2 (1996). Thus, where a claimant is capable of performing his or her former part-time past relevant work (i.e., a part-time job which meets the definition of "substantial gainful activity," which was performed within the previous 15 years, and which was held by the claimant long enough for him or her to learn it), the Commissioner need not establish that the claimant is capable of performing the duties of a full-time job. *Arroyo v. Commissioner of Social Security*, 82 Fed. Appx. 765, 768 (3d Cir. 2003).

The ALJ's opinion indicates that he was aware of the fact that Plaintiff's past work, in order to constitute "past relevant work," needed to meet the definition of "substantial gainful activity" and had to last for a sufficient period of time to enable her to learn it. R. 22 ("In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity."). Nevertheless, there are some ambiguities in the record as to what the ALJ actually determined with respect to Plaintiff's prior jobs. In his opinion, he stated that Plaintiff had "past relevant work as a housekeeper, receptionist and data entry clerk." *Id.* In his "findings," however, he mentioned only Plaintiff's work as a housekeeper. R. 23. The record indicates that she worked as a housekeeper for only about a month or two. R. 64. Moreover, she apparently worked as a housekeeper during August and September of 2002, which was *after* her alleged onset date of June 13, 2002. *Id.* If Plaintiff's work as a housekeeper did not constitute disqualifying "substantial gainful activity" for purposes

of the *first* step of the sequential evaluation process, it could not have constituted "past relevant

work" for purposes of the *fourth* step of the process.

In his opinion, the ALJ stated:

The evidence in this case establishes that the claimant has past relevant work as a
housekeeper, receptionist and data entry clerk.

The impartial vocational expert testified that based upon the claimant's residual
functional capacity, the claimant could return to her past relevant work as
housekeeper, receptionist and data entry clerk as previously performed and as
generally performed in the national economy.

The vocational expert found that the exertional and non-exertional requirements
of this job are consistent within the claimant's residual functional capacity as
determined in this decision, and therefore the claimant retains the capacity to
perform "past relevant work." (Social Security Rulings 82-61 and 82-62).

R. 22. The transcript of the hearing, however, indicates that Dr. Cohen was not speaking about

Plaintiff's job as a housekeeper when he testified. Dr. Cohen made the following observations in

response to the ALJ's inquiry:

Q.          What does it show as far as the Claimant's vocational background?

A.          Well, she's had numerous jobs. There are three jobs that she has
            had for a year or longer. She's worked as a data entry clerk. This
            appears to be sedentary, unskilled. She's worked as a front desk
            clerk in an aerobics center. This appears to be light, unskilled.
            And she's worked at the Giant Eagle as a cashier and basically a
            stock person. This is light, unskilled work.

***

Q.          And if that hypothetical individual has the limitations specified in
            this exhibit, any jobs including past work that the hypothetical
            individual might be able to do?

A.          She could do all of her old jobs.

R. 325-326.  Dr. Cohen's testimony, when considered in context, indicates that it may refer only

to the three jobs at which Plaintiff worked for at least one year.  Indeed, for work to constitute

"past relevant work," it must have lasted long enough for the claimant to learn it.  20 C.F.R. §

404.1560(b)(1).

When Plaintiff applied for DIB, she indicated that she had worked as a data entry clerk

from May 1992 through April 1993.  R. 64.  She apparently worked for only one to two days per

week, and for about four or five hours per workday.  *Id.*  Plaintiff also reported that, from

September 1994 through August 1995, she had worked as a front desk clerk.  *Id.*  At that job, she

apparently worked only three to four days per week, and for about five hours per workday.  *Id.*

The hearing transcript indicates that the ALJ and Dr. Cohen were not aware of how many hours

per week Plaintiff had spent working at these jobs.  Plaintiff's counsel questioned Dr. Cohen

about this issue at the hearing:

> ATTY:     I just have a few questions to clarify.  The data entry clerk and
> front desk position, would those jobs that the Claimant–what years
> did the Claimant have those jobs?
>
> VE:       The data entry clerk was from 5/92 to 4/93, and the front desk clerk
> was from 9/94 to 8/95.
>
> ATTY:     And is there any indication as to whether those were full or part-
> time jobs?
>
> VE:       No indication.

R. 329.  In light of these discrepancies, the Court cannot determine whether the ALJ properly

determined that the "past relevant work" relied upon as the basis for his decision actually

*constituted* "past relevant work" under the regulations.  Although the Court does not agree with

Plaintiff's assertion that the ALJ had to find that she was capable of performing the duties of a full-time job in order to deny her application for DIB, the Court cannot affirm the ALJ's decision based on the current state of the record. It is possible (if not likely) that the ALJ neglected to incorporate the definition of the term "past relevant work" (which, in turn, incorporates the definition of the term "substantial gainful activity") into his analysis when he denied Plaintiff's claim at the *fourth* step of the sequential evaluation process. The Court cannot affirm a determination if, "while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). As far as the Court can tell, the ALJ's ultimate determination may have been based on a legal impossibility.

Plaintiff also argues that the ALJ erred in failing to determine whether her migraine headaches constituted a "severe" impairment at the second step of the sequential evaluation process.[6] The second step is generally viewed as "a *de minimis* screening device to dispose of groundless claims." *Newell v. Commissioner of Social Security*, 347 F.3d 541, 549 (3d Cir. 2003). To surmount this hurdle, a plaintiff need only demonstrate that he or she suffers from something more than a "slight abnormality" (or a combination of slight abnormalities) which

---

[6]The regulations implementing the Social Security Act provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The term "basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples of such "abilities and aptitudes" include: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1521(b), 416.921(b).

would have no more than a minimal effect on his or her ability to work. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360 (3d Cir. 2004). Hence, in this context, the meaning of the word "severe" cannot be equated with the word's typical meaning. The purpose of the second step of the sequential evaluation process is to dispose of claims in which a claimant fails to make a "reasonable threshold showing" that his or her impairment is "one which could conceivably keep him or her from working." *McDonald v. Secretary of Health and Human Services*, 795 F.2d 1118, 1122 (1st Cir. 1986). The Court notes that Plaintiff's application was denied at the fourth, rather than the second, step of the sequential evaluation process. Moreover, the ALJ explicitly recognized that, under 20 C.F.R. § 404.1523, he was required to consider all of Plaintiff's medically determinable impairments (including her non-severe impairments) in determining her residual functional capacity. R. 18. The Court acknowledges that "because step two is to be rarely utilized as a basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow" when it is employed for *that* purpose. *McCrea*, 370 F.3d at 361 (internal citations omitted). Where the second step is not *utilized as a basis for the denial of benefits*, a rigorous examination of the Commissioner's severity determination is generally not warranted. *Newell*, 347 F.3d at 546 ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and *the sequential evaluation process should continue*.")(emphasis added).

The ALJ specifically determined that Plaintiff's bipolar disorder was "severe." R. 19. Consequently, Plaintiff's claim was not *denied* at the second step of the sequential evaluation process. Unfortunately, however, the ALJ did not address the effect that Plaintiff's migraines had (or may have had) on her ability to work. At the hearing, the ALJ questioned Plaintiff about

her physical impairments:

> Q.    And, okay, like physically, okay, you look okay, but you have thyroid problems.  Is that what--
>
> A.    Well, the doctor that I have is a new doctor for my thyroid, told me it's the lithibid [phonetic] that I take.
>
> Q.    That's messing up your thyroid?
>
> A.    Yeah, it gave me like a goiter.
>
> Q.    Yeah.
>
> A.    Yeah, and I forgot what your question was.
>
> Q.    Well, okay.  Yeah, then–okay, like you feel tired, or you feel good?  How do you feel most days as far as physically?  You wake up in the morning, you want to do stuff, or you just want to go to sleep or--
>
> A.    Well, I do have migraines and sinus--
>
> Q.    Yeah.
>
> A.    –problems.  The migraines, I just went to the emergency room because I was sick for like a month.
>
> Q.    Um-hum.
>
> A.    I couldn't get rid of them.  And then I went there, and they helped me a lot.  Like within an hour or two, I felt so much better.
>
> Q.    Yeah.
>
> A.    So I deal with the migraines.  I mean they're not totally gone, and I don't know.  My--
>
> Q.    Okay, and–okay, now as far as your--
>
> A.    Physically, yeah, you asked me.

R. 307-308.  The ALJ went on to ask Plaintiff about her mental problems.  R. 308.

The record contains documentary evidence of Plaintiff's migraines. On March 20, 2003, in a letter to Dr. Paul Antalik, Dr. Edward Williamson indicated that Plaintiff had been suffering from migraine headaches. R. 189. He completed a neurological examination of Plaintiff, which was "entirely within normal limits." *Id.* He characterized Plaintiff's headaches as "mixed tension migraine headaches." *Id.* Dr. Williamson also noted that Plaintiff had a goiter. *Id.*

In his opinion, the ALJ acknowledged Dr. Williamson's letter. R. 18. Nevertheless, he did not evaluate the effect (if any) that Plaintiff's migraines had on her ability to work. His entire evaluation of the evidence focused exclusively on Plaintiff's bipolar disorder. R. 19-22. It may be that Plaintiff's testimony concerning the relief that she had received shortly after receiving treatment in an emergency room for her migraines caused the ALJ to conclude that they had no effect on her ability to work, but he did not state such a finding. Even if Plaintiff's migraines were not "severe" for purposes of the second step of the sequential evaluation process, the ALJ was required to consider that impairment in determining her residual functional capacity. 20 C.F.R. § 404.1545(a)(2). The ALJ did not make a severity determination as to Plaintiff's migraines, nor did he explain his *implicit* conclusion that they resulted in no functional limitations. R. 17-23. Thus, this matter should be thoroughly addressed by the Commissioner on remand.

Plaintiff's third argument concerns the ALJ's hypothetical question to Dr. Cohen. Doc. No. 8, pp. 17-19. She contends that the ALJ did not accurately convey all of her limitations to Dr. Cohen, thereby rendering Dr. Cohen's testimony inadequate to support the ALJ's decision. *Id.* It is clear that, for a vocational expert's testimony to constitute "substantial evidence" within the meaning of § 405(g), the ALJ's hypothetical question must include all of the claimant's

credibly established limitations.  *Rutherford v. Barnhart*, 399 F.3d 546, 553-555 (3d Cir. 2005).

Plaintiff's objection to the ALJ's hypothetical question centers on his use of the words "low stress," which she considers to be an unduly vague description of the jobs that she was capable of performing.  Doc. No. 12.  The relevant exchange at the hearing occurred as follows:

> Q.  Now, as far as the stress levels of the job, are these jobs that require, you know, high levels of production or, you know, what kind of stresses–how would you characterize them say in comparison to jobs, other jobs, in the national economy?
>
> A.  These are typical unskilled jobs of relatively low stress.
>
> Q.  Low stress?
>
> A.  Low stress.
>
> Q.  Yeah.  Now, and try to place somebody with a bipolar disorder, what kind of vocational factors might you consider relevant?
>
> A.  If she's a bipolar disorder, relate to how often and how severe the person's depression is versus and also their mania, how they get along with other people, how they can manage–issues of managing stress and whether they can be maintained on a full-time basis or not.
>
> Q.  Um-hum, and so it's a factor of how well these symptoms are controlled?
>
> A.  That's correct.
>
> Q.  Now, in determining whether or not there might be jobs, there might not be jobs, could you tell me what guidelines you might follow as far as, you know, whether you think they could be successfully placed?
>
> A.  Well, the issues are whether they can perform simple, repetitive tasks for--
>
> Q.  Yeah.
>
> A.  –a full workday, that is and be able to maintain that on a regular basis.  Guidelines are usually one day per month they are allowed absenteeism.  They have a half hour to an hour lunch period and two 15-minutes breaks in the morning–one in the morning and one in the afternoon.  They would

be–have to be able to maintain concentration and focus on simple, repetitive tasks for the remainder of the time.

Q.    Now, looking at the jobs that might be in existence in the economy, would the jobs that the Claimant did in the past, were those the kind of jobs that you might consider placing a person--

A.    Yes.

Q.    –with bipolar?  And the key issue is control the symptoms, reliability and, I guess, relations with others?

A.    And focus, being able to focus on the task.

Q.    Focus on task.  I don't know if you're going to be able to answer this question or not.  Okay, there's a consultative examination, B-8F, and that doctor filled out a form indicating what sort of limitations the, you know, the Claimant might have based upon his examination.  Say we have a hypothetical individual who is a younger individual, high school education, prior work history similar to that of the Claimant, and say they have–I'll pass you over this B-8F.

A.    I have--

Q.    Okay.

A.    –it already.

Q.    And if that hypothetical individual has the limitations specified in this exhibit, any jobs including past work that the hypothetical individual might be able to do?

A.    She could do all of her old jobs.

Q.    Yeah.  Now, if I change the hypothetical and this time give full credence to all the Claimant's complaints and testimony, you know, that she had during her testimony at the hearing, would that change your opinion?

A.    Yes, her testimony indicates that she has problems dealing with people even with minimally intrusive kinds of situations or with minimal relationships with them, and she can only maintain employment, because of the side effects of the medication--

Q.     Um-hum.

A.     –for part-time work activity.

R. 326-328.  The ALJ's questioning of Dr. Cohen focused almost exclusively on Plaintiff's bipolar disorder, which is a nonexertional impairment.  He apparently believed that Plaintiff suffered from no exertional impairments.

The ALJ's hypothetical question to Dr. Cohen incorporated by reference a consultative psychological examination of Plaintiff that was completed by Dr. James Williams during the winter of 2004.  Dr. Williams diagnosed Plaintiff as suffering from bipolar disorder.  R. 242.  He indicated that Plaintiff was slightly limited in her ability to interact appropriately with the public and with supervisors and moderately limited in her ability to interact appropriately with co-workers and to respond appropriately to work pressures and changes in a usual work setting.  R. 244.  Since Dr. Cohen had Dr. Williams' report in front of him when he testified, he was aware of these limitations.

It may be that the ALJ did not believe that Plaintiff's migraines resulted in any functional limitations, but it was incumbent upon him to explain his reasons for this belief (if, in fact, that was his belief).  Without an adequate evaluation of the medical evidence, the Court cannot determine whether the ALJ's hypothetical question to Dr. Cohen incorporated all of Plaintiff's credibly established limitations.  On remand, the Commissioner must conduct a thorough evaluation of the medical evidence, consider all of Plaintiff's impairments, and clearly articulate the limitations which Plaintiff has had since her alleged onset date.

In his brief, the Commissioner argues that the record contains "substantial evidence" to

support his ultimate determination as to disability. Doc. No. 11, pp. 9-14. The Court, however, has no legislative mandate to conduct its own evaluation of the evidence. In *Fargnoli v. Massanari*, 247 F.3d 34 (3d Cir. 2001), the United States Court of Appeals for the Third Circuit made it clear that the rule laid down by the United States Supreme Court in *Securities Exchange Commission v. Chenery Corporation*, 318 U.S. 80 (1947), applies in this context. *Fargnoli*, 247 F.3d at 43-44, n. 7. In *Chenery*, the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery*, 332 U.S. at 196. The Commissioner's rationale for determining that Plaintiff was not statutorily disabled cannot be sustained for the reasons discussed in this opinion, and the only available remedy is a remand for further administrative proceedings pursuant to the fourth sentence of § 405(g). The Court is unpersuaded by Plaintiff's argument that she should be awarded benefits at this point. Doc. No. 8, p. 20. No opinion is expressed as to whether Plaintiff can establish that she is (or was) statutorily disabled. That determination has been committed by Congress to the Commissioner.

## VI.    Conclusion

On remand, the Commissioner must consider all of Plaintiff's credibly established limitations in determining her residual functional capacity and adequately explain which impairments result in functional limitations and which impairments do not. If the matter is

disposed of at the fourth step of the sequential evaluation process, the Commissioner must be sure that Plaintiff's prior jobs constitute "past relevant work" within the meaning of the applicable regulations (i.e., work that she did within the last 15 years, that constituted *substantial gainful activity*, and that lasted *long enough for her to learn it*, in accordance with 20 C.F.R. § 404.1560(b)(1)). If the matter proceeds to the fifth step of the process, the Commissioner must ensure that his determination is "supported by substantial evidence" for purposes of § 405(g).

The Court acknowledges that the Commissioner and the ALJ's perform a daunting task in reviewing an overwhelming number of denied claims each year, and that, despite good faith efforts to fulfill their statutory obligations to each claimant, there will occasionally be something overlooked in the medical record that might not be missed if one had a more leisurely caseload. Thus, although this case is remanded for the Commissioner/ ALJ to fill in some material gaps in reconsidering the denial of benefits, said gaps are certainly understandable.

Accordingly, the Court will deny the Commissioner's motion for summary judgment, deny Plaintiff's motion for summary judgment insofar as it seeks an award of benefits, grant Plaintiff's motion for summary judgment insofar as it seeks a remand for further administrative proceedings, and remand the case for further proceedings before the Commissioner. An appropriate order will follow.


   s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: All counsel of record